UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICKA P.S.,[1] <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, in his official capacity as the Warden of the California City Detention Center; et al., <br><br> Respondents. | No. 1:25-cv-02049-TLN-CKD <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Ericka P.S.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED in part. Petitioner's request for a TRO is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I.     Factual and Procedural Background

Petitioner is a citizen of Nicaragua who entered the United States on November 3, 2022, with her then-20-year-old child. (ECF No. 2-1 at 3.) Petitioner fled Nicaragua after experiencing surveillance, threats, and harassment for her refusal to participate in municipal elections or support the government. (*Id.*) On December 10, 2022, Petitioner was paroled into the United States pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act. (*Id.*) On November 3, 2023, Petitioner filed an application for asylum. (ECF No. 2-3 at 4.)

For the past three years, Petitioner lived in the community, complied with her immigration supervision, and actively litigated her asylum claim. (ECF No. 2-1 at 6.) While out of custody, Petitioner was charged with and convicted of a misdemeanor violation of California Vehicle Code section 23103.5, for which she was ordered to pay a fine. (*Id.* at 4; ECF No. 2-3 at 21.)

Petitioner participates in the Intensive Supervision Appearance Program ("ISAP") which requires her to submit a photo once a month. (ECF No. 2-3 at 25.) On October 16, 2023, Petitioner reported to the ISAP office in Stockton, California to retrieve a document and to resolve issues she was experiencing with the ISAP application. (*Id.*) She had experienced problems with the ISAP application before, and believed she needed to go in person to get help. (*Id.* at 25–26.) After arriving at the ISAP office, Petitioner was informed that she was under arrest for not having presented herself. (*Id.* at 25.) Despite Petitioner explaining that she has always followed her obligations, Petitioner was detained. (*Id.*) Petitioner was ultimately transferred to the California City Detention Center. (ECF No. 2-1 at 4.)

On December 29, 2025, Petitioner filed a petition for writ of habeas corpus challenging her detention as violating due process and 8 U.S.C. § 1226(a). (ECF No. 1.) The same day, Petitioner filed the instant Motion for a TRO and Preliminary Injunction. (ECF No. 2.)

## II.     Standard of Law

For a TRO to issue, courts consider whether Petitioner has established: "[1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner

must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.  ANALYSIS[2]

#### A.  Likelihood of Success on the Merits

Petitioner has established a likelihood of success on her due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has submitted the requisite affidavits and notified Respondents via electronic mail on December 29, 2025 that she would be filing the motion. (ECF No. 2-2.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3] Because Petitioner is likely to succeed on due process, the Court need not address her statutory claim.

1  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);
2  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,
3  the question remains what process is due.").

4  As for the first step, the Court finds Petitioner has demonstrated that she has a protectable
5  liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at
6  *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is
7  authorized by statute, that person may retain a protected liberty interest under the Due Process
8  Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit
9  promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they]
10 fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032
11 (N.D. Cal. July 24, 2025) ("*Pinchi*") (quoting *Morrissey*, 408 U.S. at 482) (modifications in
12 original).  "Accordingly, a noncitizen released from custody pending removal proceedings has a
13 protected liberty interest in remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-
14 06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an
15 individual's conditional release rises to the level of a protected liberty interest, courts have
16 "compar[ed] the specific conditional release in the case before them with the liberty interest in
17 parole as characterized by *Morrissey*."  *R.D.T.M.*, 2025 WL 2617255, at *3.

18 Here, Petitioner gained a liberty interest in her continued freedom when she was released
19 on parole on December 10, 2022.  (ECF No. 2-1 at 3.)  Like in *Morrisey*, release from
20 immigration custody created an "implied promise" that Petitioner would not be re-detained during
21 the pendency of her immigration proceedings if she abided by the terms of her release.
22 *Morrissey*, 408 U.S. at 482.  Petitioner submits that she has complied with the conditions of her
23 release and would call ISAP any time the application did not work.  (ECF No. 2-1 at 6; ECF No.
24 2-3 at 26.)  Petitioner's release for the past three years further strengthens her liberty interest.  As
25 this Court has previously found, as have many other courts in this district when confronted with
26 similar circumstances, Petitioner has a clear interest in her continued freedom.  *See, e.g.*, *Doe v.*
27 *Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in
28 allowing petitioner to remain in the community for over five years strengthened petitioner's

liberty interest).  Under *Morrissey*, Petitioner's prior misdemeanor conviction does not lessen her liberty interest.  *Morrissey*, 408 U.S. at 481–82 (describing the liberty interests of criminal parolees).

Petitioner states she was informed that she was under arrest for not having presented herself.  (ECF No. 2-3 at 25.)  Petitioner refutes this accusation and maintains that she has always followed up on her obligations and maintained contact with ISAP.  (*Id.* at 25–26.)  At this juncture, the Court finds credible Petitioner's belief that she was in compliance with the terms of her supervision, preserving the full force of her liberty interest.  *See*, *e.g.*, *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum applicant improper under § 1226(a), even if she violated the conditions of her release, because she was not a danger to society or a flight risk).  Petitioner has thus shown she has a protectable liberty interest.

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was released from immigration detention on December 10, 2022 and since then has exercised her freedom, living in community and actively litigating her asylum claim outside the confines of detention.  Accordingly, Petitioner has a profound private interest in her return to liberty.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation here is considerable given Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  (ECF No. 2-3 at 30–33.)  "Civil immigration detention, which is nonpunitive in purpose and

1  effect, is justified when a noncitizen presents a risk of flight or danger to the community."
2  *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).  Without a bond or
3  custody hearing to determine whether Petitioner's detention is justified, the risk that Petitioner is
4  being erroneously deprived of her liberty is high.

5  Finally, the Government's interest in detaining Petitioner without a hearing before a
6  neutral decisionmaker is low, particularly as Petitioner has complied with her monitoring
7  requirements and is actively pursuing asylum.  As this Court has previously noted, it would be
8  less of a fiscal and administrative burden for the Government to return Petitioner home to await a
9  determination on her asylum petition than to continue to detain her.  *See Pinchi*, 792 F. Supp. 3d
10 at 1036 (similarly noting "the cost to the government of detaining [petitioner] pending any bond
11 hearing would significantly exceed the cost of providing her with a pre-detention hearing.").

12 On balance, the Government's interest in detaining Petitioner without a hearing is low and
13 does not outweigh Petitioner's substantial liberty interest or the risk of erroneous deprivation of
14 liberty.  Due process requires Petitioner receive a hearing before a neutral decisionmaker that
15 complies with all applicable statutes and regulations if she is to be re-detained.

16 Having found Petitioner has a protected liberty interest and that due process requires
17 Petitioner receive a hearing before a neutral decisionmaker prior to re-detention, the Court finds
18 Petitioner has shown a likelihood of success on the merits.

19        B.    Irreparable Harm

20 Petitioner has also established she will suffer irreparable harm in the absence of a TRO.
21 The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration
22 detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been
23 detained for over two months, is separated from her family, and risks imminent removal without
24 an opportunity to contest the basis for her detention.  (ECF No. 2-1 at 8–9.)  In support of her
25 motion, Petitioner also submits a declaration documenting poor conditions at the California City
26 Detention Facility.  (ECF No. 2-4.)  Further, "[i]t is well established that the deprivation of
27 constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695
28 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an

1    alleged deprivation of a constitutional right is involved, most courts hold that no further showing

2    of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir.

3    2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical

4    liberty by detention constitutes irreparable harm."). In addition to harms imposed by her

5    continued immigration detention, Petitioner has shown she is likely to succeed on the merits of

6    her constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

7               C.     Balance of Equities and Public Interest

8           As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

9    balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.

10   Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

11   (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the

12   Government's favor, because the Government faces no hardship. The Government "cannot

13   reasonably assert that it is harmed in any legally cognizable sense by being enjoined from

14   constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir.

15   1983). Rather, "it is always in the public interest to prevent the violation of a party's

16   constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth

17   Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz

18   v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal

19   citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

20          Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS

21   Petitioner's request for a TRO. (ECF No. 2.)

22       **IV.   CONCLUSION**

23          Accordingly, IT IS HEREBY ORDERED:

24   1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED in part.

25      Petitioner's request for a TRO is GRANTED. This Court will rule on the request for a

26      preliminary injunction following the Order to Show Cause described herein;

27   2. Respondents must IMMEDIATELY RELEASE Petitioner Ericka P.S. from custody.

28      Respondents shall not impose any additional restrictions on her, unless such restrictions

are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have her counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order. Respondents shall file responsive papers by **Tuesday, January 6, 2026**. Petitioner may file a reply, if any, by **Monday, January 12, 2026**. **The parties shall indicate in their briefing whether they waive a hearing**. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov. Petitioner shall file proof of such service no later than **9 a.m. on December 31, 2025.**

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: December 30, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE